We'll hear argument next in Case 10-1320, Bluford v. Arkansas. Mr. Sloan. Mr. Chief Justice, and may it please the Court, the question in this case is whether the jury foreperson's announcement that the jury had voted unanimously that the petitioner was not guilty of capital murder and first-degree murder has double jeopardy consequences. We respectfully submit that it does for two reasons. First, the foreperson's announcement on this record establishes an acquittal. And second, even if it is not viewed as an acquittal, under this Court's well-established standard, there was not manifest necessity for a second trial on the same murder charges. Now, with regard to the acquittal, the reasons why the foreperson's announcement was an acquittal are twofold. First, the foreperson's announcement was clear and explicit that the jury had voted unanimously against guilt. And second — Is that altogether clear? Because she first said, didn't she first say, that the jury cannot agree on any one charge? Yes, Your Honor. And then the Court specifically asked, what is the count on capital murder? And she said, unanimous against that. What is the count on first-degree murder? Unanimous against that. And both the Arkansas trial court and the Arkansas Supreme Court here observed that the foreperson had been explicit that the jury had voted unanimously. Scalia Well, that's the count. The jury takes lots of votes. Was it utterly clear that the jury could not go back and reconsider that? Unless that was absolutely clear, it seems to me a verdict had not been announced. She just said how we voted the last time. With regard to finality, Your Honor, I think that the jury could have changed its mind, but I want to emphasize the reason I say that, because I think it highlights something very important that is conspicuously absent here. And three brief points on that, Your Honor. First, when the foreperson announced that the jury had voted unanimously against guilt on the murder charges, she was announcing a jury decision. There was nothing equivocal or qualified about that. Second, Your Honor. Scalia Wait. Excuse me. Excuse me. When you say she was announcing a decision, then you mean they can't go back on it. Unanimous No. That was the — well, that's my second point. Scalia She was announcing a vote. Unanimous Yes. She was announcing the decision that they had made at that point. But the reason — my second point, Your Honor, the reason why I say that they could have gone back is the historic, traditional principle that a jury can correct or revise a verdict while it continues to be sitting. Now, and in this Court's opinion, in Smith v. Massachusetts, this Court talked about that traditional and historic principle, cited an English case from 1824, the Parkin case, where the jury had done that, had gone back after announcing a verdict, and how that would play out here if the jury came back and they said, you know, we were unanimous before, but now one juror says that he doesn't really agree with that. Then, of course, a court could take that into account. Alito I think you've conceded away your case when you say that. The one characteristic of a verdict that seems perfectly clear to me is that it is final. The jury can't render a verdict and be discharged and then come back the next day and say, you know what, some of us, one of us has changed his mind or her mind. It's the final vote. And so why isn't the critical question here whether what the four-person said was this is our final vote, we're not going to go back, this is it, or this is the way we vote it now and it's one or more of us may have wanted to retain the right, reserve the right to go back and vote again? Because the reason why I think the announcement was an acquittal here is twofold. First, there was the explicit statement of what the vote was at that time. But second, there is nothing on the record in this case that contradicts that statement. At the time the jury was discharged and at the time the trial ended, the jury had said nothing that contradicted that earlier statement. Suppose the Court said, after this colloquy, I want you to go back and think about this whole case again. Could the jurors then have revisited the first count, the capital murder count? Well, Your Honor, if the jurors had come back and said the colloquy is what we've got, and the judge said, I want you to deliberate more about this entire case, A, was it permitted to do that under Arkansas law, I guess one of my real questions? Oh, well, in terms of Arkansas law and the particular transition instructions here, no, we don't think the transition instructions operate that way, Your Honor. There's nothing in the instructions that say that. Nothing, Arkansas law doesn't permit the jury to, before it's delivered its final formal verdict, to think about the case again and vote on it again? No, it does, Your Honor. And that's why I'm trying to draw a distinction between how the transition instructions here operate, the sort of acquittal-first instructions, and the general principle that a jury can correct or revise its verdict. I mean, in a sense, one way to think about it is that the jury can correct or revise its verdict. Kennedy, I think this may be what Justice Alito has as well. I don't think it gave a verdict here. I don't think it's revising its verdict. It's mid-deliberation, as Justice Scalia said at the outset. There's nothing in the jury statement at all that suggested that it was tentative to say we have unanimously voted against guilt on the murder charges. And it's not that she was guilty. But then they went out again. Pardon? And that's the problem. The jury, the judge gave them an Allen charge and they went out again. And I think you have recognized that the jury could have then said we'll go back to square one, we'll consider capital murder, first-degree murder. So they, I think you recognize that after the judge gives them a charge of this kind, they can begin all over again. And here, when they came in and said we can't agree, defense counsel didn't ask to have the jury polled. The defense counsel asked for verdict forms to be sent into the jury room that would allow them to record their verdicts on the murder charges. And that's a very important point here, Your Honor, because it was the State that prevented any additional elucidation about what the jury thought on the murder charges. Scalia, so long as it's still tentative thoughts, it doesn't matter. The jury could have — suppose the jury went back after this announcement, yeah, we, you know, we've decided on the greater charge, or we voted on the greater charge for the defendant. Suppose they go back and one of the people who wants to convict on the lesser charge as to which they're deadlocked finally says, well, look it, if you won't come along to convicting on the lesser charge, by God, I'm not going to acquit on the greater charge. Isn't that the kind of stuff that goes on in jury rooms all the time? Yes, it does, Your Honor. So there's no certainty whatever that what was the vote at that time would be the vote when they finally got done. Well, but, Your Honor, on the record, as the case comes to this Court, what you have is this very clear and explicit statement against guilt on the murder charges, and then nothing in what the jury says when it comes back that contradicts that. Sotomayor, I thought that part of your argument was that, given the instructions in this case, which the jury appears to have followed to the T, they can't get to a lesser count unless they've acquitted on the preceding count. Yes. When the judge asks them, did you reach criminal negligence, they say, we were told not to. Now, the judge, whether he was right or wrong, underhues as to whether they followed the instructions or he misunderstood them, I don't know. But it's very clear in context from the government's argument to the jury to the defense argument to the jury, you don't reach the split count or even talk about it unless you've been acquitted. So given that the jury responds at the end, we haven't reached a verdict, and the jury said earlier that they hadn't reached a verdict on the one issue, isn't the only assumption is that they didn't go back? Yes. I think that's exactly right, Your Honor, because the jury instructions very explicitly said that you don't go to a lesser offense unless you have a reasonable doubt on the greater offense. The State over and over again, I was just going to say the State over and over again in its closing argument said to the jury, you cannot reach a lesser offense unless you unanimously find the defendant not guilty on the greater offense. And as you point out, the Arkansas Supreme Court in the Hughes case has said that the law in Arkansas is that you don't get to a lesser offense unless the jury doesn't get to a lesser offense unless it in essence acquits on the greater offense. Right. But that's the final say. You don't know what the jury did as a preliminary matter. I would think in a case like this, perfectly reasonable for the jury to say, let's take a preliminary vote. We'll go down and if we all agree on something right away, that's what we'll do. Does everybody agree on capital murder? No, some don't. Does everybody agree on murder? No, some don't. Does everybody agree on manslaughter? Yes. Okay. We all know that manslaughter, he's at least guilty. Now let's go back and talk about the more serious offense, and some of us will try to persuade the holdouts. And yet you would say, as soon as they reach the point of saying, yes, he's guilty on manslaughter, they can't go back. Well, the instructions don't provide for them to go back to the State, which had never made that argument until this Court in this litigation, that they can go back. It doesn't point to any case. Well, but then I'm not sure it's just a matter of State law, then. What we're doing here is talking about the constitutional minimum. And I — Justice Scalia gave a hypothetical, you can have a more — even a more principled jury than that. And he said, you know, now that we're thinking about manslaughter, it is true that thus and so happened. Maybe we were wrong on the first degree category. I mean, that's perfectly plausible. Well, let me say, whatever one thinks about finality, and I do think there was sufficient finality here for the reasons we have been discussing, but whatever one thinks about finality, let's consider this in the context of manifest necessity. Because whatever one thinks of finality, I submit that it is clear that when a jury foreperson stands up in front of the jury, in front of the defendant, lawyers for both sides, and says, we have voted unanimously that he is not guilty of these murder charges, that is something at the very core of the Double Jeopardy Clause, at the heartland of it. Alito, are you saying that there was no manifest necessity to declare a mistrial as to any count, in which case there could be no retrial whatsoever, or no manifest necessity to declare a mistrial on capital murder? And if you're saying the latter, then what would you have us do with the decision by the Arkansas Supreme Court that Arkansas law does not allow a partial verdict? Okay, Your Honor. So first I'm saying only that there was no manifest necessity as to capital murder and first-degree murder, which were the two charges on which they were unanimous. We agree he can be retried on manslaughter and negligent homicide. Now, as to the Arkansas Supreme Court decision on that, and that brings up a very important point, because the State's position essentially is it could never be final enough, as Your Honor suggests, because it simply is impermissible under Arkansas law to have an acquittal on a greater offense as long as you're deadlocked on a lesser offense. And as to that, this Court's opinions are clear, that if you have a State law that prevents giving effect to what is in substance an acquittal, it must yield to the Federal constitutional command of the Double Jeopardy Clause. And Hudson v. Louisiana is very instructive on this point, because in Hudson, Louisiana had a law that after a conviction, a judge could not enter an acquittal order. He could only enter a new trial order. And after the conviction on murder in Hudson, the judge entered a new trial order and explained that it was because of insufficient evidence. And this Court unanimously said that that substantively was an acquittal. It has full double jeopardy consequences, notwithstanding the fact that Louisiana law does not allow a judge to enter an acquittal order. Breyer's law is, as I can't figure this out very well, we have an imaginary State, and what the State says to the jury, jury, you have three choices. Choice one is you acquit this person of everything. Choice two is you convict him of something. Choice three is you say you're hung. Okay? I don't see anything in the Constitution that prevents a State from doing that. So if that no – what is it? And of course, if you follow that, there was no acquittal on those early charges. That wasn't a permissible verdict. And now you structure your argument any way you want. But that's a State has a – I would think within the limits of due process, it can structure the jury's arguments as it wishes. But so what's wrong with that? And if that – if there's nothing wrong with that, then how do you win? Okay, Your Honor. Two points. One that focuses on the jury foreperson's announcement here. Oh, you could say, well, you could – that's one route. What you say is nothing wrong with that. That if the judge is foolish enough to get the jury, to get the foreperson to say what the state of the deliberation is in detail, then the Double Jeopardy Clause kicks in. Well, that's an argument. Well, Your Honor, they – so they make a mistake and now suddenly it's jeopardy, whether it wasn't before or this seems like a minor matter compared to the issues of jeopardy, whether the jury honestly said what was going on in the room, particularly if it's changeable. With respect, Your Honor, I disagree that it's a minor matter. When a foreperson stands up with the jury present and says, we voted not guilty. And as to that with the announcement, for example, the Massachusetts Supreme Judicial Court decision in the Roth case, which is in the briefs, is instructive because in that case, the Massachusetts court said very emphatically, you should not ask a jury that kind of question. Okay. So let's – go ahead. May I just finish the sentence, Your Honor? Please. In that case, the trial court had asked the jury and the foreperson had said that they had voted against guilt and the greater offenses. And so the Massachusetts court said if the – essentially, these are my words, but if the Double Jeopardy Clause means anything, it means that when you have an announcement like that, it has to matter. And the other point, Your Honor, is that this Court's opinion, such as Fong-Fu and Sanabria, say that it doesn't matter if an acquittal is on an erroneous basis. Once it happens, we give full double jeopardy consequence to it. So even if one thinks that the judge shouldn't have asked the question and it would have been permissible not to ask the question, once he did and once that's on the record, that is of considerable constitutional motivation. Scalia. Only if, and I think this is the premise of your argument, only if there is a constitutional necessity to – to sever the various charges. There is a constitutional necessity to let the jury come in on one charge without coming in on the other. It seems to me that's the premise of your argument. And I don't know where that constitutional necessity comes from. Well, Your Honor, first, on the manifest necessity point, when there is an announcement like that, because your manifest necessity depends upon the necessity of severing. Yes, if you sever, then there's no manifest necessity of resubmitting the greater charge, but it assumes – it assumes a severing, and I don't know where the severing comes from. The manifest necessity argument is that when there is an announcement like this that goes right to the core of double jeopardy, and, you know, we know that with greater and lesser included offenses, if there is a basis for an acquittal, then that has to be given effect on the separate charges. That's green in the process. Kennedy, but that's after a verdict. Why is it that the purposes of the double jeopardy clause are implicated when a jury before it delivers a final verdict says where it is mid-deliberations? The defendant, of course, is terribly disappointed if they go back and then find him guilty, so I guess there's a personal disappointment interest for the few hours that it takes for the jury to come to a different verdict. But he doesn't have to prepare the defense again. He doesn't have to go to trial again. It's all one trial. I don't see why there's a double jeopardy interest in the Massachusetts case that you point out. I don't see where the double jeopardy interest was in saying that you can't go back. What purpose of the double jeopardy clause is implicated by the rule that says you can't go back? Well, Your Honor, on the manifest necessity point, I'm not saying you can't get back. What I am saying is that when you have an announcement of such constitutional moment at the heartland of the double jeopardy clause, a judge can do many things to the court. I'm asking why it's the heartland of the double jeopardy clause. I question that. Yes, Your Honor, because this Court again and again has talked about the special role of an acquittal where a jury finds the defendant not guilty. Now, even if one views that as not final, it surely is significant at the heartland of the double jeopardy clause. Why surely? Pardon? I mean, why surely? Look, the thing ends, to go back to my example. The case is over. The jury comes in and says, Judge, we're hung. Okay? Everybody's going to go home. But the defense lawyer says, Judge, I'd like to know which of the five charges they're on. Does the defense lawyer or the prosecutor have a constitutional right to find out? Okay. Well, Your Honor, if one assumes the four-person's announcement is not in it or it's of no consequence. No, I'm not assuming anything. I'm giving you the answer. No, no. This is what I'm saying. So there's just the question, does the defendant have a right to inquire? And here is the answer. There's the question, I would say definitely yes in a hard transition state. If this is where you get into the case. Breyer, in the state I imagine, is that, remember, there were three possible verdicts, acquit of everything, convict of something, or say you're hung. That's what we're imagining. Okay? And you can imagine the set of instructions go to A, B, C. That's fair enough. Those four things. Okay. Now, case over. Acquitted, no, hung, Your Honor, defense attorney. I want to find out which of the five they're on. Does he have a constitutional right to get the answer? He does, if? He does. Yes, if it is a hard transition state. And the real or especially if it's a hard transition state. I don't know what, I'm sorry, I'm not. What a hard transition or sometimes it's called an acquittal first state, which may put it in relief more, which is where, as in this case, the jury is told you may go to the legal defense. Okay, okay, I see, okay, fine. In other words, here I got it. And every State court, except for Arkansas here, that has addressed the issue in the context of a hard transition has said that the defendant does have a right to inquest. Okay. It's very different if you don't have that kind of hard transition. Wait, I'm only midway, because I'm trying to follow this through. I still don't know why the Constitution does that, but I'll take your word for it. I'd assume it was State law that does that, but fine. Now, he says, yes, you have the right. Either of you has the right. We're on number three. Your Honor, I would like a poll of the jury as to the acquittal as to 1 and 2. Does both do both sides have the right to get that? So after they've announced an acquittal? No. Well, here's what happened. Judge, I want to know what number they were on when they couldn't reach the foreman. Number five, Your Honor. Judge, I would like a poll of the jury, each juror, as to numbers 1, 2, 3, and 4, to be sure that they were unanimous on each as to the acquittal, which under the instruction allowed them to go to the next one, okay? The Constitution requires it. Well, no, I mean, look, I think there can be variations in State procedure, but I think the court's right. No, no, why doesn't the Constitution require it? You have to be sure there was an acquittal. Or you have to be sure there was an acquittal. So what I'm doing, obviously, is I'm spinning out what I see as the constitutional consequences of taking your constitutional position, and I'm going to be ending up by saying I've never heard of this before. Well, there's a lot of stuff I haven't heard of, so that doesn't prove that much. Well, there are several States that have this, and the reason to do that is to make sure that it's a very simple rule, and you seem to be arguing past it or around it. I think what they say is once the jury announces an acquittal, then that's the substance, the person's been acquitted. Once they've made a judgment and announced it, the Constitution doesn't, the Double Jeopardy Clause doesn't entitle someone to have it announced, doesn't entitle someone to force the jury to announce it. But if the jury gets up at the end of the trial in a State that doesn't permit partial verdicts and said, contrary to the instructions of the judge, contrary to the law of the State, the jury says we acquitted on counts 1 and 2, we're hung on count 3, the Constitution says jeopardy attaches because there's been an announcement of a verdict. Isn't that your position? That's exactly right. There's another body of case law also, which I was addressing, which talks about when jeopardy attaches, even if there's not that kind of announcement. But, Your Honor, it's not that kind of announcement. Sotomayor, our case in Ball says it doesn't matter whether a judgment is entered or not. As far back as 1896, Ball said the judgment is irrelevant. It is the verdict of acquittal. And it basically equated that verdict with it doesn't matter if it's entered properly, if the jury's polled, if anything happens, it's as soon as the jury announces acquittal. That's the operative double jeopardy kicker. Isn't that what you're saying? Yes. Yes, Your Honor. And I thought I heard you arguing that here the lack of manifest necessity was that the judge had heard they reached that verdict and he should not have discharged a jury without asking them could they reach a verdict that they had, had they reached a verdict that they announced. Yes. From a manifest necessity perspective, this Court's decisions on manifest necessity from United States v. Perez in 1824 through Renico v. Lett in 2010 have emphasized the judge has to exercise sound discretion. And to exercise sound discretion here, the judge could have done many things. But the one thing he could not do, consistent with sound discretion, is to do nothing and to proceed as though that announcement hadn't happened. Can you see what you're talking about? If we talk about our manifest necessity decisions, it's true that we, isn't it, that we said last year we have never reversed the district court's exercise of discretion under the manifest necessity standard? In the case of a jury deadlock is what Your Honor is talking about. Yes. This Court has emphasized the deference to a district court. But Renico did not present the important threshold issue about what are the charges on which the jury is deadlocked. And here there's an insufficient basis to conclude that the jury was deadlocked on the murder charges. There was nothing like the foreperson's announcement at issue in Renico. I don't want to – I'm sorry for taking up your time. Your friend says you did not object when the judge announced that he was going to declare a mistrial. Is that correct? Your Honor, there's not an objection at that time. But that is not a waiver for a couple of reasons. First, the Arkansas Supreme Court reached the merits. It's a Federal constitutional issue. Second, before that point, defense counsel had been very explicit that it only wanted a mistrial on the remaining counts and not on the other ones. And third, this Court has emphasized that the distinction in manifest necessity is when the defendant affirmatively consents or moves for mistrial as opposed to either if the judge does it sua sponte and the defendant doesn't have to object or if the prosecutor moves for it. Thank you, counsel. General McDaniel. Mr. Chief Justice, and may it please the Court, there are three key reasons why the Jury has not terminated in this case. First, the jury was free to revisit capital and first-degree murder when it resumed its deliberations. Where does it say that in the jury charge? I think that there's a critical misunderstanding by Petitioner of Arkansas's jury instructions. And there's a lot of use of titles such as acquittal first or hard transition or soft transition. Well, as I understand what the Arkansas instructions said, what the instructions in this case said is that the jury unanimously had to have a reasonable doubt on an offense before it could go down to the next offense. So that's to say that the jury unanimously had to find what is what leads to an acquittal. So the jury had to unanimously acquit on the greater offense before it could go down to the next. And the instructions don't say anything about moving back up. And this jury seems to take its responsibility under these instructions extraordinarily seriously. This jury was instructing the judge on the instructions and about how they had to go down step by step and reach unanimity on the one before they could get to the next slowest down. So I guess I'm asking, why do you think under these instructions that the jury felt itself able to go back up? Well, there are three primary reasons. One, in states that are acquittal-first states, states that truly require a resolution of each charge before the transition to subsequent charges, they use words like unanimous. In fact, they all use the word unanimous in their instruction. Arkansas doesn't do that. We use a rather ambiguous or unambiguous, depending on how you look at it. The state prosecutor kept on saying, you all have to agree on this. And he was accurate, and he was echoed by the defense counsel in her closing argument as well. But there is no requirement of a resolution. The jury verdict forms reflect that perfectly. In fact, Justice Breyer's example of a given state is exactly what Arkansas does, as compared to a true acquittal-first state, where there are multiple jury verdict forms, where you truly resolve one charge, attaching final resolution, and in fact, attaching jeopardy or terminating jeopardy at that point. In this case, there is one verdict form. You can decide. Sotomayor, I'm so totally confused by you ignoring Hughes. The Arkansas charge says if you have a reasonable doubt of the defendant's guilt on the charge of capital murder, you will consider the charge of murder in the first degree. And I thought the Arkansas case has said no one juror is going to think they can go to the next count. They have to understand from this charge that it has to be unanimous. And that's what the prosecutor argued, it's what the defense argued, it's what your Supreme Court has said has to happen. I'm a little confused, given your case law, your Supreme Court case law that says you can't move on to the next one unless it's unanimous. How you can answer Justice Kagan's question the way you have? I mean, there's nothing in your case law that's exact. Scalia, you didn't finish your answer, did you? I thought you were going on to some other points. I did, and in fact, I think that Hughes is extraordinarily important. And respectfully, I believe that the Petitioner has mischaracterized Hughes. There is a line of dicta in Hughes that is particularly useful in the Petitioner's brief, but it is Justice Corbin of the Arkansas Supreme Court who authored Hughes who was rejecting a double jeopardy claim in Hughes and, in fact, invoked this line which says what has been quoted in the briefs. It is Justice Corbin who was presented with this exact same argument to interpret the instructions in Bluford and authored Bluford and rejected what allegedly was his position on the instructions. Hughes was not about the instructions. No part of Hughes was asked to interpret what our instructions are. Kagan. I think if you look at what the judge said, what the prosecutor said, what the defense counsel said, and then what the jury said, it's clear that they all thought that they had to unanimously agree on something before they could go to the next crime. And again, there is no suggestion in what anybody said that they could go back up. Is there any suggestion that they couldn't go back up? That is extraordinarily important. Isn't it usually assumed that a jury is not finished until it's finished? The State would assert that that is precisely the case here. You have exactly the type of jury verdict form that Justice Breyer suggested in his example. They have to decide on something. You have one charge, capital murder, and it's lesser and included. This person, Mr. Bluford, does not deny that he is guilty of a homicide offense. That was included in their closing argument. Does not deny that he is subject to retrial because there was manifest necessity on at least two of the charges. They simply would like to say that there was not manifest necessity for the greater of the two. And the only way that that happens is either to answer, I believe it was Justice Kennedy's hypothetical earlier, are you required to go and engage in partial verdicts even if a State does not choose to do so, even if a State is, in fact, a general verdict State? Kagan, Even if general, even if you're not required, and maybe you are required, but even if you're not, here the jury comes back. The jury tells the judge we've unanimously reached acquittal on these two counts. At that point, why doesn't the judge have an obligation? You know, the judge sends them back for a half hour. There's no reason to think that in that half hour they moved back up the scale. There's every reason to think they just remained stuck where they were. But even assuming that there is some conceivable possibility that they went back up, why doesn't the judge, working with the manifest necessity standard, have an obligation to say, well, what about it? Did you? Did you reach acquittal? Did you reach a judgment on these two counts? Well, there are a couple of reasons. One, I think it's fair to say that the State recognizes it was improper for the judge to inquire in the way that he did. I think that it's fair to say that he recognized that it was improper, as he didn't do it on their first announcement of deadlock, and he didn't do it on their final announcement of deadlock. It's important to note that although defense counsel at trial did ask for revised verdict forms, that was not her initial reaction. Her initial reaction was to say, Judge, I think that the jury needs to go back and keep deliberating, and I would ask that you give them another Allen charge. That's not the reaction that anyone would have if they had just heard an acquittal of their client. This was, in fact, a mid-deliberation report, probably wrongfully elicited by the trial judge, but it was just that, a snapshot in time with no intent by the jury to make an announcement. So when they returned, the real question, I think, hinges as this Court analyzed in Smith v. Massachusetts, is, is it possible for there to be revision? And it doesn't, in fact, Justice Kagan, have to be the entirety of the jury completely pivoting in their decisions. All it would have to be is one, and we recognize that even after they have announced unanimously, signed a verdict form, offered their assent, and if they're of changing the verdict. So is it possible? Sotomayor, if the judge had called them back in and said, are you deadlocked on the third count, and my hypothetical to your adversary, they said, well, we have acquitted on capital murder, we've acquitted on the second count, we are still judge deadlocked. If this had been announced at the very end, what would be your position today? Certainly, there would be — it would be a tougher case if everything ended at that moment, because at that point, counsel would have to ask the trial court, if you're declaring a mistrial at this moment on this report, what are you going to do? Are you going to accept this or are you not going to accept it? Will there be an opportunity for polling? It doesn't sound like the judge was interested in any of the defense counsel's positions on mistrial. He announced that whether the jury told him they were deadlocked or not, he was going to call them back. So I don't know that the judge would have done what you suggested, because the judge — the defense attorney did ask for partial verdicts after their first announcement. And, Justice Sotomayor, they were rightly rejected. Partial verdicts are not contemplated in Arkansas law. It would have been error for him to engage in partial verdicts at that time. And there's nothing in the Fifth Amendment that would require this Court to intrude upon the liberty of the States to determine whether this is true. Sotomayor, so if the State rule says we don't take partial verdicts, and the judge had entered a verdict, a judgment, declared a mistrial, or entered a judgment saying hung jury as to all counts, would Jeopardy have attached? If there's a hung jury as to all counts, then no. If the jury had announced what it did, but following Arkansas law as you read it, you don't take partial verdicts, it could only be one hung jury. Correct. Jeopardy have attached. No. If there's manifest necessity for a mistrial, and in this case there's one charge, one homicide offense, and as this Court has long recognized, Brown v. Ohio being a key — So really the only issue here is whether it's reasonable to conclude that a jury that had been told a quit first comes back and says we're only hung on this, and the jury says, listen to each other on what you're hung on, that that jury reasonably — the judge could have ignored their stated verdict and entered a trial — a mistrial on everything else. Respectfully, Justice Sotomayor, they were not told a quit first. That is a subtle, but key distinction. You don't agree — I don't think you agree that it was their stated verdict. Do you? I absolutely do not. It was not a verdict. And there's no room in Arkansas law for saying you're acquitted as to one, acquitted as to two. But Arkansas law says you come in with a verdict of guilty of something, a verdict of acquittal of everything, or the words hung jury. Is that right? Well, it's not up to the jury to determine. No, they say to the judge. But that's correct. Judge, we are hung. Judge says hung jury. That is correct, Justice Breyer. That is correct. I guess, General McDaniel, one question about what Arkansas law does is it seems a little bit as if it's trying to get the suite of an acquittal first State without the bidder. So the suite is an acquittal first system where you force a jury to reach agreement on one thing before it goes to the next thing, makes compromise jury verdicts and that's why a State might say we want an acquittal first system. The bidder that most States take with that is that they say, well, if we're forcing them to agree on these things and they agree on a verdict of not guilty, we're stuck with that. Now, what Arkansas seems to want is a system in which it forces juries to agree on the greater charges before going to the less, but won't take the consequence of that, which is that sometimes they agree that on the greater charges they're not guilty. No, Justice Kagan. The majority of the States and circuits recognize there is a difference between a hard transition instruction and an acquittal first instruction. They recognize the difference between a partial verdict and a general verdict on charges that include lesser and included. And what we require is one verdict on a charge, guilty or not guilty, and they are at liberty to consider. They can be at the very end, and, again, it's very important to know, it's wholly speculative in this case to know where they were when they ultimately were hung. And so we are operating in the world of bright-line rules, which are very important for jeopardy. We know when jeopardy attaches, when the jury is in the box. We know when jury or when jeopardy terminates. And it's when there's some conclusion with finality. Every case that this Court has analyzed, even Price and Green and Sylvester, where the jury remained silent, there was some finality that led to the termination of jeopardy. Ginsburg. In this case, they deliberated for four and a half hours at the point where the judge  had said, and so they were up to the manslaughter, and they were stuck on that, and the jury foreman said, we can't go to negligent homicide because we haven't reached agreement on the manslaughter charge. Then they go back for just a half hour. How realistic is it to think that they began over at that point, rather than trying to resolve the manslaughter charge so they could do exactly what the judge told them and then get to the negligent homicide charge? The State wouldn't venture to speculate as to what they did, although I would respectfully say that that is probably what happened. They went back and they tried to follow the instructions of the Court. That's certainly viewing things in a light most favorable to the Petitioner. And there's no question about it. Scalia. General McDaniel, how probable is it that when the jury is polled and having voted unanimously when they were back in the jury room, one of the members of the jury changes his mind and votes the other way? That's not at all probable, is it? But it happens sometimes, doesn't it? It does. And when it happens, what's the result? It bears all of the difference in the finality of the verdict. And again, as this Court noted in Smith, it's the availability, it's the incorporation within a State's procedure for that finality to be undone. My Lord, how likely is it, truly, for a trial court to completely reverse his or her granting of a motion of dismissal? But this Court said, if there's a procedure in place for it to be revisited, then jeopardy doesn't terminate until the point at which there's no return. Is this a fair explanation of Arkansas law, which doesn't seem to me to be perfectly clear? What the jury is supposed to do is to vote on the greatest offense first and reach a reasonably firm vote. And if they reach a reasonably firm vote that is unanimous, not guilty, then they can move on to the next, to the lower offenses. But that reasonably firm vote is not an absolutely final vote, and there is still the possibility for the jury to go back. Is that a correct understanding? Yes, Justice Alito, that's precisely correct. And just as Justice Scalia noted earlier, we recognize that there are compromises that are incorporated into transitions. One may be willing to say, I'm willing to move on from first-degree murder. I'm the only one here that believes that we should find guilty of first-degree murder, but that's not going to happen. I'm not going to change your votes. But I'm willing to move on and go to manslaughter. But would that vote equate to an acquittal if asked with finality? For double jeopardy purposes, is the question what Arkansas law actually says or what the jury understood Arkansas law to be? I think what Arkansas law actually says is how we should be judged, but at the same time, the evidence here was that the jury came in to answer questions about the status of their deliberation. I think that Justice Kagan properly noted that they were, in fact, giving the judge some instructions on how the instructions should work. And they were answering that question, and the foreperson, one person, was asked, well, where are you? And she announces. And we have no reason to believe that she was not being truthful. At the same time, we have no way to verify it. And the defense counsel said, Judge, I think they ought to be given another Allen charge, and they need to go keep deliberating. And at that point, if they had returned no matter how unlikely, if they had come back in ten minutes later and said, we find unanimously guilty of capital murder, no matter how unlikely, if that was possible, then jeopardy could not have terminated upon that report. It could not have been an acquittal, because they couldn't have continued deliberating on those charges for another instance. Sotomayor, how do you deal with our cases Ball and Martin-Lenin and the whole line that a State – a form of State law judgments doesn't control? I think that Ball is particularly helpful to us, and I think that the Hudson case cited by Petitioner is also important. If a State puts a procedural bar to considering a final judgment of acquittal, then that procedural bar is trumped by the Fifth Amendment of the Constitution.  Sotomayor, I'm not sure what that means. Well— That's the problem with all of this area, which is States vary on how they enter judgments after the jury speaks its verdict. So where do we draw the line as to when a State law trumps, when a Federal law, the Double Jeopardy Clause, trumps a State system? Justice Sotomayor, I think that your answer is contained within the question. A verdict is the true answer. If there is a verdict, then the force and impact of that verdict is what matters. Did this jury announce a verdict? If so, jeopardy attached. But this was not a verdict. It bore none of the hallmarks of a verdict. It wasn't published. It wasn't verified. It wasn't accepted by the Court. It wasn't even accepted by the defendant's attorney. It wasn't a verdict. In Ball, there was a clear verdict. The jury announced acquittal. The judge entered acquittal. And later the indictment was dismissed as being faulty, and under the law of England up until that time, even in the United States, a faulty indictment dismisses everything and you start de novo. So even the acquittal gets thrown out because you can't acquit of something that was void ab initio. Mr. Sloan told us that it was the State that prevented the elucidation, because defense counsel said, Judge, we can try to do what Double Jeopardy Clause says, not try a person twice for the same offense. So, Judge, please ask the jury to rule on those two, give them a sheet that gives them a choice, guilty or not guilty. What they went to originally was just a series of guilty on the four counts, and then the other choice was acquitted. Now defense counsel says, ask them, is it guilty or not guilty, instead of asking just is it guilty, and the judge declines to do that, isn't that why we don't have definitive answers, because defense counsel says, said, Judge, give the jury a choice and then the jury has the chance to tell us whether they. Some States do in fact give the opportunity to inquire into the jury's deliberations. Partial verdict forms and inquiries are permitted, but they're not required. And in Arkansas, the State properly objected to changing the agreed upon of verdict forms, as the judge said, midstream. They'd been agreed to, they had been submitted, and they properly reflected the law in Arkansas. So to have changed them would have either been by agreement or because they were constitutionally required. And that's ultimately the case, the question in front of this Court. Are they constitutionally required? And that leads into the manifest necessity analysis, because any time there is a charge with lesser and included offenses and a general verdict State, and the jury simply announces we cannot reach a determination, is the constitutional trigger truly resting on the fortuity of the announcement of a snapshot vote in open court? Or is a constitutional trigger how they voted back in the jury room? And if that is the constitutional trigger, then wouldn't partial verdicts be required? In fact, this Court does not require partial verdicts. An announcement of unable to render a verdict warrants a mistrial. This Court has said clearly in Renico that we defer to a trial court's decision that manifest necessity exists. In fact, this Court has never overturned a trial court's decision that manifest necessity existed for the unhung jury. Here a jury was hung. They simply could not render a decision on the verdict forms they were submitted, guilty or not guilty of a homicide. They couldn't answer the question. And therefore, jeopardy should continue and the retrial should be permitted. Kaganern General, you mentioned Green and Price before, and those are the cases, of course, where there is a conviction on a lesser charge, we don't know anything about the greater charge, and then the conviction is overturned. What the Court says there is, well, we don't know anything, but we are going to make a reasonable assumption. And the reasonable, no, I think I said a legitimate assumption. The legitimate assumption that they acquitted on the greater charge is before they went down to the lesser charge. Now, it seems to me as though there are a hundred reasons why that might not be true. The jury could have just gone to the lesser charge immediately as a compromise position without voting on the greater charge. But the Court said we will make a legitimate assumption. So why isn't the same true here? We are making a legitimate assumption, I think honestly, on the basis of much more than Green and Prince had to work with, if you will, that the jury in fact acquitted of those greater offenses. Well, in Green and Price there were verdicts. And in this case there was no verdict. There was a verdict that eventually got overturned. There was no verdict on the greater offenses. You have to look at Green and Price in conjunction with this Court's holding in Brown and the analysis of lesser included offenses within a general offense. They are one for jeopardy purposes. In this case, Mr. Bluford was facing one charge for jeopardy purposes. The information, the indictment only included one charge. So he could not have been convicted of both manslaughter and murder in the first degree. This Court is very clear about that. So in Green and in Price where there was a conviction on a lesser charge and silence, in other words, they didn't expressly say not guilty of this higher charge and not guilty of this lesser charge, it stands only to reason and certainly to constitutional scrutiny. You can only be convicted of one of them. And if a jury finds, and again, it still requires publication, verification and acceptance by a court of an actual verdict of one of those charges, it only stands to reason and logic that the upper charges were dismissed. That is entirely different, respectfully. Alito, in Green and Price, the defendants were tried once on the greater offense and jeopardy terminated without a finding of manifest necessity regarding the termination of jeopardy. To me, that is the sound basis for those decisions. But I have to agree with what Justice Kagan said. Justice Black's reasoning in Green that the jury impliedly acquitted the defendant of the greater offense by convicting the defendant of the lesser offense doesn't really make any sense, because they could have simply been in disagreement about the greater offense. Well, and I think that's correct, and I think that there has to be some question here as to is it an implied acquittal or was it an express verdict. I think the Petitioner can't really decide or at least hasn't articulated where the jeopardy terminating event occurred. Was it when they made their announcement, in which case why did they go and subsequently deliberate even on the request of counsel? Was it at the conclusion when there was the possibility that nothing really had changed after the report and a declaration of manifest necessity, which did not come, by the way, at the request of the State? It was sui sponte by the Court. And then there was, in fact, a waiver, I think a legitimate waiver, of an objection by defense counsel. There was no at no time at that point before releasing this jury did defense counsel renew a motion to submit partial verdict forms, to inquire into the jury, to hold the jury accountable, and so on and so forth. And I don't think that's where they were. Ginsburg. Well, she had asked, so why was it necessary for her to repeat them? She said, Judge, please let them vote yes or no on the two most serious charges. And the judge said no. She might have figured if she was going to repeat that, she would just annoy the judge. She had made the request. The primary difference would be, in fact, the possibility that the polling may be different after another half-hour of deliberations. All it takes is one juror to change their mind. And, in fact, it may have benefited the defendant. What if they had already decided they'd change their mind again and acquit it on manslaughter and had moved down to negligent homicide? And that's what they were talking about. Where they were at the end of the final 30 minutes of deliberation is purely speculative. And because it's purely speculative, regardless of whether it could benefit the State or the defendant, it means that no report was a verdict. No report could have been a verdict. Sotomayor, other than trenching on State rules that don't create the constitutional protection, what's wrong with a simple rule that says once a jury announces that it is unanimous on acquittal of a count, you can't go back unless the jury says that it's not unanimous in some way? What's wrong with that rule? It would be difficult to apply in practicality, and it certainly would be part of it. Why? A jury comes out and says we're unanimous, there's a poll, one juror says I'm really not unanimous, they go back. But once a jury says it's unanimous, a judge can't declare a mistrial, can't do something until it ensures itself that jeopardy hasn't attached. The primary reason why the majority of jurisdictions have rejected that analysis, whether it's announced or not, is the coercive effect on a jury. If you have a tired, frustrated, potentially angry jury, and they're told we're either going to let you go or we're not going to let you go home until you decide something, you have to tell us something. Sotomayor, I'm not asking, I'm not announcing or setting a rule that says you have to ask them, you have to force them to give a verdict. I'm saying what's wrong with a constitutional rule that simply says once the jury says we're unanimous, there can't be manifest injustice, there can't be manifest necessity until you're sure that they can't reach a verdict, that that verdict is not their verdict. So we're not asking, but if, just so I understand your hypothetical, we're not asking them, but if fortuitously they happen to announce, spontaneously or otherwise. Three State courts have said, three State courts have said, if there's any meaning to Jeopardy, it is that once a jury out loud says to a defendant, you're not guilty, the defendant is entitled to rely on that. So what's wrong with that simple rule? First, this Court hasn't – that Court, that rule could be allowed to work, and in fact it does work in some States. I don't see how it could benefit Mr. Bluford, and so I don't see how it follows into his relief because it didn't in fact happen. And so it takes us – it might be beneficial to future defendants if they ever find themselves in such a circumstance, but it doesn't apply retroactively. Thank you, General. Mr. Sloan, you have three minutes remaining. Thank you, Your Honor. The core of the State's position is that the foreperson's explicit announcement that the jury had unanimously voted against guilt is of no constitutional moment whatsoever. Now, there is no opinion of this Court that has ever said that a jury statement like that is entitled to no weight whatsoever. And if this Court were to say that in an opinion, it would open the door to many of the core double jeopardy evils that this Court has repeatedly focused on. For example, acquittal avoidance, emphasized in Arizona v. Washington. A court doesn't want to accept the acquittal consequences, so it just says, we're not going to accept that. And something that's a very real and practical danger here, which this Court has emphasized over and over again in opinions, is giving the State the opportunity to refine and hone its case based on what it learned at the first trial about what went badly. And that is exactly what happened here. This was vigorously contested. The State's capital murder and murder, first-degree murder case fell apart. Their lead expert on it was destroyed. The jury heard both sides, voted unanimously, not guilty. And as this Court said in Ash v. Swenson, a core evil of the double jeopardy clause is that we don't let the prosecutor have a dry run at a first trial and then get to go before a second trial with a new jury and plug the holes in it. And the State's position here, that this is of no moment at all, would raise that danger very prominently. In conclusion, Your Honor, the jury in this case heard the evidence on both sides unanimously voted against guilt on the murder charges, announced that in open court, and never said a word that contradicted it. Forcing Petitioner to run the gauntlet a second time on the murder charges would run counter to what this Court has repeatedly emphasized as the core purposes, policy, and language of the double jeopardy clause. If there are no further questions, Your Honor. Roberts. Thank you, Mr. Sloan. General, the case is submitted.